**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| TARA RODAS | ) | |
| 6099 Oaklawn Lane | ) | |
| Woodbridge, Virginia 22193 | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 1:26-cv-2122 |
| | ) | **FILED UNDER SEAL** |
| v. | ) | |
| | ) | |
| ROBERT F. KENNEDY, SECRETARY, U.S. | ) | |
| DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES | ) | |
| 200 Independence Avenue, S.W. | ) | |
| Washington, D.C. 20201 | ) | |
| | ) | |
| Serve: | ) | |
| JEANINE PIRRO | ) | |
| United States Attorney for the District of | ) | |
| Columbia | ) | |
| 601 D Street, N.W. | ) | |
| Washington, D.C. 20579 | ) | |
| | ) | |
| *Defendant* | ) | |
| | ) | |

**COMPLAINT TO ENFORCE SETTLEMENT AGREEMENT**

STATEMENT OF FACTS

In January 2024, Senator Charles Grassley sent criminal referrals to the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security ("DHS"). The referrals were based on disclosures made by a brave federal employee: Tara Lee Rodas, a career public servant with more than 23 years of federal service, who reported that the United States government was placing unaccompanied migrant children with MS-13-affiliated sponsors.

She was right.

1

HHS's own internal records confirmed it. Senator Grassley said so publicly. The FBI opened investigations. The world eventually learned what Tara Rodas had known - and reported - since 2021.

By then, she had already paid the price.

On September 21, 2021, less than 20 days after she reported gang-affiliated sponsors to HHS, Ms. Rodas was removed from her job. She was walked off the site in front of her colleagues by security, stripped of her credentials, and was informed she was under investigation. No findings. No process. No explanation that could withstand scrutiny.

For more than four years, she waited for the law to work.  It didn't.

The Trump Administration opened the door to make things right. The career staff slammed it.

On January 20, 2026, HHS sat across from Ms. Rodas and two Office of Special Counsel ("OSC") mediators and agreed to a settlement. She ultimately accepted every version of every term the agency proposed - without condition. Then, three months later after long delay and repeated representations that they were working on the written settlement agreement memorializing the terms, HHS took it back. ███████████████████████ ████████████████ vanished on March 18, 2026. The remaining meaningful relief disappeared on March 31. █████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████.

This is a case about what happens when a federal employee tells the truth about children in danger - and the government spends years making her regret it.

COMES NOW, Plaintiff, Tara Rodas (hereinafter "Ms. Rodas" or "Plaintiff") by and through counsel, Eric L. Siegel of Eric Siegel Law, PLLC, and hereby files this action against Defendant U.S. Department of Health and Human Services (hereinafter "HHS" or "Defendant"), and for cause states:

## **INTRODUCTION**

1.    This lawsuit involves allegations by Ms. Rodas that Defendant HHS breached a settlement entered into on January 20, 2026, and has now sought to alter terms after an agreement on all material terms had already been reached at mediation.

## **PARTIES**

2.    Plaintiff Tara Rodas resides in Woodbridge, Virginia.

3.    Defendant Robert F. Kennedy, is the Secretary of HHS, which is a federal agency with its principal place of business in Washington, D.C., and its primary mailing address located at 200 Independence Avenue, S.W., Washington, D.C. 20201.

## **JURISDICTION AND VENUE**

4.    Subject matter jurisdiction is proper in this Court because this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Article III of the Constitution because the Defendant is a federal agency.

5.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Washington, D.C.

## FACTUAL ALLEGATIONS

6.      Plaintiff Ms. Rodas has served the federal government for more than 23 years and the Inspector General community for nearly 20 years. Her official personnel record identifies her as a GS-14 Step 10 Supervisory Training Specialist (Series 1712) with the Council of Inspectors General on Integrity and Efficiency ("CIGIE"); however, her actual job title at CIGIE is Program Manager and Learning Producer. She first joined CIGIE as a detailee from the United States Postal Service Office of Inspector General in September 2014 and was converted to a permanent full-time CIGIE employee in March 2020 - a CIGIE tenure of nearly 12 years.  With CIGIE's approval, in 2021, Plaintiff Ms. Rodas applied through a government-wide detail announcement and was selected by Defendant, the United States Department of Health and Human Services ("HHS"), to serve as a detailee. On May 13, 2021, she deployed to Dallas, Texas for initial training, before being deployed to the Pomona Fairplex Emergency Intake Site ("EIS") on May 19, 2021. Her first day on the job at the Pomona Fairplex EIS was May 20, 2021, where she served in a position "to care for and place Unaccompanied Children who had entered the United States via the southern border."

7.      On September 5, 9, 10, and 13, 2021, Ms. Rodas made protected disclosures to officials within the Department of Justice Office of the Inspector General ("DOJ OIG") and the HHS Office of Inspector General ("HHS OIG"), including Inspector General Michael Horowitz, Senior Counsel to the Inspector General Adam Miles, HHS OIG Whistleblower Protection Coordinator Eyana Esters, Assistant Inspector General for Investigations Elton Malone, and other HHS OIG agents. In those disclosures, Ms. Rodas reported that human traffickers and a sponsor with confirmed Transnational Criminal Organization ("TCO") affiliations were exploiting the

4

HHS Administration for Children and Families ("ACF") Office of Refugee Resettlement ("ORR") Unaccompanied Children ("UC") program.

8. Within days of Ms. Rodas's final protected disclosure, HHS materially altered her job duties. On or about September 15, 2021, Ms. Rodas was removed from matters involving MS-13 investigations by FFS Richard Zapata.

9. On September 21, 2021, Ms. Rodas was escorted from the worksite by Richard Zapata and security officer Amanda Burd. At that time, Ms. Rodas was informed that she was "under investigation," and her government identification badge was confiscated by security personnel.

10. HHS's actions resulted in Ms. Rodas's removal from her professional responsibilities and caused her substantial economic, reputational, and emotional harm.

11. As a result of HHS's retaliatory conduct, Ms. Rodas filed a Complaint of Prohibited Personnel Practices and Other Prohibited Activity with the United States Office of Special Counsel ("OSC"), alleging unlawful whistleblower retaliation under the Whistleblower Protection Act.

12. On January 20, 2026, Ms. Rodas and HHS participated in mediation in an effort to resolve Ms. Rodas's claims without litigation.

13. During the mediation, the parties reached agreement on the material terms of settlement, including the following:



14.    On or about January 29, 2026, counsel for HHS represented to counsel for Ms. Rodas that HHS's draft agreement was "still going through internal review." "We will follow up with you with a timeframe for when we expect to send it to you for review…"

15.    On or about February 6, 2026, HHS further confirmed the existence of the parties' agreement by proposing ██████████████████████████████████ pursuant to the settlement terms.

16.    On or about February 11, 2026, HHS further ██████████████████████ ████████████. She concluded her communication by stating, "We will send you the draft agreement as soon as possible."

17.    On week later, on February 18, in response to an inquiry from counsel for Ms. Rodas regarding the status of the draft settlement agreement, counsel for HHS stated that she was checking the status of the agreement and "hope to have the draft to [him] soon."

18.    On or about February 24, 2026, over a month after the mediation and agreed upon terms, counsel for HHS emailed counsel for Ms. Rodas, stating, "We appreciate your client's

patience as the agency works through its internal review process for the draft settlement agreement. We will provide you with the draft agreement as soon as we are able to share it."

19.    In reliance on the parties' agreement, Ms. Rodas provided HHS with the requested information and documentation relating ███████████████████████████████ ███████████████████████████████.

20.    On March 5, 2026, to Ms. Rodas' surprise, HHS informed Ms. Rodas that the material terms previously agreed upon during mediation were "off the table" and that HHS intended to propose materially different settlement terms.

21.    On March 18, 2026, HHS further advised that any revised settlement proposal would be based solely on the ██████ information previously provided by Ms. Rodas and would not include ███████████████████████████ relief to which the parties previously agreed. HHS provided no explanation for its repudiation of the prior agreement.

22.    On March 31, 2026, HHS formally presented revised settlement terms materially different from those agreed upon during mediation, including:



23.    At no time did Ms. Rodas engage in any further negotiation of terms or accept any newly offered terms or conditions offered by HHS, as she had agreed to the previous terms on January 20, 2026, and intended to abide by them.

**FIRST CAUSE OF ACTION**
**Breach of Contract**

24.    Plaintiff realleges and reincorporates by reference paragraphs 1 through 20 as if fully set forth herein.

25.    On January 20, 2026, Plaintiff and Defendant, the United States Department of Health and Human Services ("HHS"), entered into a valid and enforceable settlement agreement resolving Ms. Rodas's whistleblower retaliation claims upon agreed-upon material terms.

26.    A settlement agreement reached during mediation is enforceable notwithstanding the absence of a fully executed written agreement where the parties mutually assent to all material terms and intend to be bound. *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001); *Hall v. Eagle Maint. Servs., Inc.*, 2005 U.S. Dist. LEXIS 10649, at *4 (D.D.C. 2005); *Quijano v. Eagle Maint. Servs., Inc.*, 952 F. Supp. 1, 3 (D.D.C. 1997).

27.    The parties reached agreement on all essential terms of settlement during the January 20, 2026, mediation, including: ███████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ████.

28.    Following mediation, HHS repeatedly confirmed the existence of the parties' agreement and represented that it was in the process of preparing the written settlement documents memorializing the agreed-upon terms. At no point prior to March 2026 did HHS contend that negotiations remained ongoing or that any material term remained unresolved.

29.    Under District of Columbia law, the absence of a finalized written agreement does not render a settlement unenforceable where the parties have already agreed to all material terms.

*Jareaux v. E St. Condos., LLC*, 2019 D.C. Super. LEXIS 719, at *2 (D.C. Super. Dec. 16, 2019), citing *D.C. Area Community Council, Inc. v. Jackson*, 385 A.2d 185, 187 (D.C. 1978).

30.    Plaintiff fully performed, and stood ready, willing, and able to perform, all obligations required of her under the settlement agreement.

31.    HHS materially breached the settlement agreement in or about March 2026 by repudiating previously agreed-upon material terms, including ██████████████████████ ████████████, and by attempting to substitute materially different and less favorable terms, including ██████████████████████████████████████████.

32.    HHS's conduct constitutes a material breach and anticipatory repudiation of the parties' settlement agreement.

33.    As a direct and proximate result of HHS's breach, Ms. Rodas has suffered damages, including but not limited to loss of the benefit of the bargain, additional economic harm, attorneys' fees and costs, and continuing professional harm arising from the unresolved retaliatory conditions that the settlement agreement was intended to remedy.

### SECOND CAUSE OF ACTION
### Declaratory Judgment, 28 U.S.C. § 2201

34.    Plaintiff realleges and reincorporates by reference paragraphs 1 through 33 as if fully set forth herein.

35.    An actual and justiciable controversy exists between Plaintiff and Defendant concerning the existence, validity, enforceability, and breach of the parties' January 20, 2026, settlement agreement.

36.    Plaintiff contends that the parties entered into a binding and enforceable settlement agreement during mediation on January 20, 2026, pursuant to which HHS agreed to, among other terms: ██████████████████████████████████████████

████████████████████████████████████████████████████

██████████.

37.    Defendant has repudiated and denied the enforceability of the agreement by refusing to honor the material terms agreed upon during mediation and by attempting to impose materially different settlement terms, after taking actions and making statements to corroborate that an agreement had been reached between the parties.

38.    The controversy between the parties is definite and concrete, touches the legal relations of parties having adverse legal interests, and is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

39.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff is entitled to a declaration from this Court that:

    a.    the parties entered into a valid and enforceable settlement agreement on January 20, 2026;

    b.    the material terms of the agreement included, among other terms set forth above, █ ████████████████████████████████████████████████████████;

    c.    Defendant materially breached and repudiated the settlement agreement; and

    d.    Plaintiff is entitled to enforcement of the settlement agreement and all available relief arising from Defendant's breach.

37.    A judicial declaration is necessary and appropriate at this time in order to resolve the parties' dispute and clarify their respective rights and obligations under the settlement agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the Court to:

a.  A declaration that the parties entered into a valid and enforceable settlement agreement on January 20, 2026;

b.  A declaration that Defendant materially breached and repudiated the settlement agreement;

c.  An order enforcing the settlement agreement according to its agreed-upon material terms, including but not limited to:



d.  Pre-judgment and post-judgment interest as permitted by law;

e.  Plaintiff's reasonable attorneys' fees and costs incurred in connection with this action; and

f.  Such other and further relief as the Court deems just and proper.

Dated: June 16, 2026                    Respectfully submitted,

                                        ERIC SIEGEL LAW, PLLC

                                        /s/  Eric L. Siegel
                                        Eric L. Siegel (D.C. Bar No. 427350)
                                        888 17th Street, N.W., Suite 1200
                                        Washington, D.C. 20006
                                        Tel: (771) 220-6116
                                        Email: esiegel@ericsiegellaw.com
                                        *Attorneys for Plaintiff*